**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

|  |  |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>  Plaintiff,<br><br> v.<br><br> ANTHEM HAYEK BLANCHARD and ANTHEM HOLDINGS COMPANY,<br><br>  Defendants. | C.A. No.   24-cv-2437 |

## **COMPLAINT**

Plaintiff United States Securities and Exchange Commission ("SEC"), for its Complaint against Anthem Hayek Blanchard ("Blanchard") and Anthem Holdings Company ("Anthem Holdings" or the "Company" and, together with Blanchard, "Defendants"), alleges as follows:

## **SUMMARY**

1.     Defendants Anthem Hayek Blanchard and Anthem Holdings Company told investors and prospective investors a series of lies about Anthem Holdings' financial prospects to induce them to invest. Anthem Holdings was an early-stage company founded and controlled by Blanchard, its CEO. In raising money from investors to fund its nascent software development operations, Defendants asserted that Anthem Holdings had secured contracts it had not secured; stated that Anthem Holdings was on the verge of closing deals when that was not true; projected millions of dollars in revenue without any reasonable factual basis to believe the company would actually earn that revenue; and referred to a large investment in the company that did not exist.

Based on these lies, the Defendants raised over $5 million from unsuspecting investors. Those investors, many of whom reside in Kansas, have now lost their investment.

2.      Defendants engaged in this fraud in connection with two securities offerings. In connection with Anthem Holding's "Series A" stock offering in 2020 and 2021, Defendants made wildly inflated revenue projections based on supposed contracts that Blanchard knew the Company would not obtain; further exaggerated those projections through incorrect financial modeling; and lied about the Company's business development pipeline—*i.e.*, deal negotiations the Company claimed were in advanced stages and expected to close. Through the "Series A" offering, the Company raised $5 million from approximately 200 investors.

3.      In connection with Anthem Holdings' "Pre-Series B" convertible note offering in 2021 and 2022, Defendants told two prospective investors that the Company had clients that did not exist; was close to securing clients when that was not true; and falsely told one of the prospective investors that another group of investors had already committed to investing $1 million in the offering. Both prospective investors fell victim to Defendants' fraud, and they collectively invested $235,000.

4.      By their actions, Defendants violated Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)] and Section 10(b) of the Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5].

5.      The SEC seeks entry of a final judgment:

        a.  Permanently enjoining Defendants from future violations of
            Section 17(a) and Section 10(b) and Rule 10b-5 by engaging in the

transactions, acts, practices, and courses of business alleged in this complaint;

b.  Enjoining the Company from directly or indirectly, including, but not limited to, through any entity owned or controlled by the Company, participating in the issuance, purchase, offer, or sale of any security;

c.  Enjoining Blanchard from directly or indirectly, including, but not limited to, through any entity owned or controlled by Blanchard, participating in the issuance, purchase, offer, or sale of any security, provided, however, that such injunction shall not prevent Blanchard from purchasing or selling securities for his own personal account;

d.  Barring Blanchard from serving as an officer or director of a public company; and

e.  Ordering Defendants to pay a civil monetary penalty.

## **DEFENDANTS**

6.    **Anthem Hayek Blanchard**, age 44, resides in Bartlesville, Oklahoma. He founded the Company in 2019, served as its chief executive officer since its inception, and controlled the Company at all relevant times.

7.    **Anthem Holdings Company** is a private corporation incorporated in Delaware in May 2019, with its principal place of business in Bartlesville, Oklahoma. The Company was in the software development business but is no longer operating.

## JURISDICTION AND VENUE

8.     The SEC brings this action pursuant to authority conferred upon it by Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)].

9.     This Court has subject matter jurisdiction over this action under Section 22(b) of the Securities Act [15 U.S.C. § 77v(a)] and Section 27(a) of the Exchange Act, [15 U.S.C. § 78aa(a)], as well as Sections 20(b), 20(d)(1) of the Securities Act [15 U.S.C. § 77t(b), (d)(1)], and Sections 21(d) and 21(e) of the Exchange Act [15 U.S.C. §§ 78u(d)-(e)].

10.     Venue lies in this Court pursuant to Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)] and Sections 21(d), 21A, and 27 of the Exchange Act [15 U.S.C. §§ 78u(d), 78u-1, and 78aa]. Certain of the acts, practices, transactions, and courses of business alleged in this Complaint occurred within the District of Kansas. Among other things, Defendants made and disseminated materially false and misleading statements to Kansas residents at in-person investor solicitation meetings within the District of Kansas, and many of those Kansas residents subsequently made investments in the Company.

## FACTUAL ALLEGATIONS

### I.   Background

11.     In May 2019, Blanchard formed Anthem Holdings to serve as a holding company. In January 2020, he incorporated Hera Software Development, Inc. ("Hera"), a wholly owned subsidiary of Anthem Holdings, purportedly to pursue a software development business focused on using blockchain and similar "public protocol" technologies for, among other purposes, cybersecurity and supply chain management (*i.e.*, tracking products throughout supply chains). At the time, Blanchard intended that Hera would be Anthem Holdings' primary revenue source.

## II.  **Defendants Offered and Sold Securities.**

12.     Section 2(a)(1) of the Securities Act and Section 3(a)(10) of the Exchange Act define "security" as including "any note [or] stock." In its Series A offering, Defendants offered and sold securities in the form of stock. In its Pre-Series B offering, Defendants offered and sold securities in the form of notes.

### A.  Series A Offering

13.     In or before March 2020, Blanchard began soliciting potential investors for what he referred to as a "Series A" stock offering. Blanchard and the Company represented that they intended to use the proceeds of the offering to fund the growth of Hera's software development business.

14.     In or about mid-2020, Blanchard communicated with Individual 1, an SEC-registered investment adviser representative based in Salina, Kansas, and the two set up in-person meetings in Kansas where Blanchard could meet and solicit potential investors. These investor solicitation meetings took place in late September and early October 2020. Following the meetings, approximately 200 people, most of whom were Individual 1's advisory clients, invested in the stock offering.

15.     At the in-person meetings in Kansas, Blanchard presented to investors, including by displaying a slide deck ("2020 Series A Deck"). At those meetings, Blanchard (or others at Blanchard's direction) also gave prospective investors a Confidential Private Placement Memorandum of Anthem Holdings Company, dated September 30, 2020 ("Series A PPM"). Blanchard (or others on his behalf) also sent the Series A PPM to prospective investors by email after the in-person meetings.

16.     Blanchard determined the content of, and had ultimate authority over, the Series A PPM and the 2020 Series A Deck.

17.     Investors in the "Series A" offering received Anthem Holdings stock in return for sending money to the Company.

18.     Through the "Series A" offering, the Company raised $5 million from approximately 200 investors.

B.  Pre-Series B Offering

19.     In or about 2021 and again in 2022, Blanchard sought to raise additional capital to fund Hera's operations.

20.     Blanchard and others drafted updated versions in 2021 and 2022 of an investor deck to use in soliciting Pre-Series B convertible note investments (the "2021 Pre-Series B Deck" and the "2022 Pre-Series B Deck," respectively).  Blanchard determined the content of, and had ultimate authority over, the 2021 Pre-Series B Deck and the 2022 Pre-Series B Deck. Blanchard sent the 2021 Pre-Series B Deck and the 2022 Pre-Series B Deck to one or more prospective investors.

21.     Investors in the "Pre-Series B" offering received convertible notes in return for sending money to the Company.

22.     From November 2021 to July 2022, five investors invested a total of $310,000 via "Pre-Series B" convertible notes. Blanchard made material false or misleading statements to at least two of those investors.

**III.** **Defendants Made False and Misleading Statements in Connection with its Series A Offering.**

23.     Defendants made materially false and misleading statements in connection with the Series A offering regarding (1) revenue projections, and (2) whether certain purported contracts between the Company and prospective clients were closing.

A.  False and Misleading Revenue Projections

24.     In both the Series A PPM and the 2020 Series A Deck, Defendants falsely projected that Hera would generate significant and increasing revenue.

25.     The Series A PPM contained the following table of financial projections, in which "Software Dev Revenue" referred to anticipated revenue from Hera.

### FINANCIAL PROJECTIONS

| Pro Forma P&L | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| Software Dev Revenue | $649,000 | $ 10,604,750 | $ 19,646,156 | $ 99,961,928 | $ 303,084,689 |
| Growth | 0.0% | 1534.0% | 85.3% | 408.8% | 203.2% |
| Client Serv. Cost of Sales | $ 72,000 | $ 656,516 | $ 1,318,476 | $ 3,348,989 | $ 5,062,274 |
| % of software revenue | 11.1% | 6.2% | 6.7% | 3.4% | 1.7% |
| Bus Dev expense, Software | $ 982,138 | $ 2,167,274 | $ 3,911,518 | $ 9,092,318 | $ 13,497,802 |
| % of software revenue | 151.3% | 20.4% | 19.9% | 9.1% | 4.5% |
| Admin Exp exc Sales & Mkt | $ 1,412,128 | $ 2,556,929 | $ 4,049,267 | $ 7,610,013 | $ 11,492,339 |
| % of software revenue | 217.6% | 24.1% | 20.6% | 7.6% | 3.8% |
| Sales & Marketing Expense, Software | $ 561,755 | $ 1,224,561 | $ 2,128,977 | $ 3,485,821 | $ 5,818,562 |
| % of software revenue | 86.6% | 11.5% | 10.8% | 3.5% | 1.9% |

26.     The 2020 Series A Deck included the following table containing the same software development revenue projections for Hera.

| Hera Software Dev Projected P&L | 2020 | 2021 | 2022 | 2023 | 2024 |
|---|---|---|---|---|---|
| Software Development Revenue | $649,000 | $10,604,750 | $19,646,156 | $99,961,928 | $303,084,689 |
| *Growth* | *0.0%* | *1534.0%* | *85.3%* | *408.8%* | *203.2%* |
| Client Services Cost of Sales | $72,000 | $656,516 | $1,318,476 | $3,348,989 | $5,062,274 |
| Gross Profit | $577,000 | $9,948,234 | $18,327,680 | $96,612,939 | $298,022,415 |
| Sales, General and Administrative Expenses | $3,456,021 | $5,948,764 | $10,089,761 | $20,188,152 | $30,808,703 |
| R&D Expense | $931,988 | $4,583,955 | $8,548,717 | $33,761,861 | $88,893,522 |
| *% of software revenue* | *143.6%* | *43.2%* | *43.5%* | *33.8%* | *29.3%* |
| EBITDA, Software | $(3,811,009) | $(584,485) | $(310,798) | $42,662,926 | $178,320,191 |
| *% of revenue* | *-587.2%* | *-5.5%* | *-1.6%* | *42.7%* | *58.8%* |
| Headcount, Yearly Average | 34 | 86 | 134 | 267 | 343 |
| | | | | | 18 |

27.     A reasonable investor would have understood from these tables that the Defendants had a reasonable basis to conclude that Hera would contribute significant and increasing revenue to Anthem Holdings.

28.     As explained below, for multiple reasons these projections were false and misleading; Defendants did not actually believe that Hera would generate that revenue; the revenue projections include a false embedded statement of material fact; and/or the projections omitted material information so that the projections were misleading when considered in context with the omitted information.

29.     The revenue projections in the Series A PPM and the 2020 Series A Deck were drawn from a financial model Blanchard had created in or about March 2020, which was never disclosed to investors or potential investors.

30.     Blanchard made four assumptions to calculate the Hera revenue projections communicated to investors—one of which was materially false and misleading. First, Blanchard incorporated $250,000 of realized revenue from the sole contract Hera had signed at that point. Second, he assumed Hera would obtain two government cybersecurity contracts in late 2020: one worth $10 million with Government Entity 1 and another worth $500,000 with Government Entity 2; this second assumption is the one that was materially false and misleading. Third, he assumed Hera would obtain two new customers in 2022, three new customers in 2023, and five new customers in 2024. Fourth, he incorporated a "growth rate" multiple (150% from the third quarter of 2022 until the fourth quarter of 2023 and 130% during 2024).

31.     The software development revenues projected by this model were the basis for, and resulted in a summary that was the same as, the revenues disclosed to investors and prospective investors in the tables in the Series A PPM and the 2020 Series A Deck. When these projections were conveyed to prospective investors in September and October 2020 and beyond, they were false and misleading for two reasons: (1) there was no factual basis for the material assumptions that Hera would be awarded two contracts with governmental entities in late 2020; and (2) Blanchard used erroneous financial modeling.

*No Contracts with Governmental Entities 1 and 2*

32.     The Defendants' software development revenue projections assumed that the Company would obtain a $10 million contract with Government Entity 1 (by November 2020) and a $500,000 contract with Government Entity 2 (by September 2020). There was no basis for those assumptions. Neither Blanchard nor anyone else at Anthem Holdings had any direct contact with either governmental entity. Rather, in or about December 2019, the Company

engaged a contractor, Individual 2, to pursue possible contracts with Government Entity 1 and Government Entity 2. Through early 2020, Individual 2 had made no progress at all with respect to obtaining a contract on behalf of Hera with Government Entity 1 and minimal progress with respect to Government Entity 2. After late February 2020, neither Blanchard nor anyone else at the Company had any substantive communications with Individual 2. Individual 2 never communicated to Blanchard or other Anthem Holdings employees that she was close to securing contracts for Hera or Anthem Holdings.

33.    There was no basis for Blanchard to believe, and Blanchard did not believe, that Anthem Holdings would obtain contracts with Government Entity 1 and Government Entity 2— let alone on the timetables and for the amounts specified in Blanchard's undisclosed assumptions.

34.    The projections also contained embedded statements of fact—the implication that the Company had secured or would soon secure contracts with Government Entity 1 and Government Entity 2 (and furthermore that it would do so on the timetables and for the amounts specified in the assumptions)—that were false.

35.    Blanchard and the Company also omitted to state material facts that were necessary to render the software development revenue projections not misleading. These omissions include the facts that the projections had been created in March 2020 and not updated in the intervening seven months; that Individual 2 had stopped pursuing possible deals with Government Entity 1 and Government Entity 2 by March 2020, and had previously made no progress with respect to Government Entity 1 and little progress with respect to Government Entity 2; and that the information available to Blanchard and the Company did not indicate that

Individual 2 was on track to secure Anthem Holdings contracts with Government Entity 1 or

Government Entity 2.

36.     The financial projections were false and misleading when made and, as detailed

above, Blanchard knew or was reckless in not knowing, and should have known, that the

projections were false and misleading. As the founder, majority owner, and chief executive

officer of the Company, who acted on behalf of the Company with respect to the conduct alleged

in this Complaint, Blanchard's scienter is imputed to the Company.

37.     The projections were material to a reasonable investor. Anthem Holdings was an

early-stage startup company that, at the time of the Series A offering, had executed only a single

contract. Despite the fact that the Company had virtually no track record, Blanchard pitched the

Company to prospective investors as a high-growth investment. Because the projections were a

key element of that investor pitch, they were material information for prospective investors to

use to evaluate Blanchard's solicitation and assess the Company's future potential. Blanchard's

unjustified and factually insupportable assumptions regarding Government Entity 1 and

Government Entity 2 inflated the projections by $10,500,000 through the first quarter of 2022

alone, and those inflated projections were then compounded in later projected quarters by the

built-in growth multiple. The amount by which the projections were inflated was material to

investors and prospective investors.

### *False Financial Modeling*

38.     The software development revenue projections were also false because Blanchard

artificially inflated them by (1) summing incorrect quarters to generate aggregate annual figures

and (2) allocating anticipated revenues to quarters inconsistent with his own internal

assumptions. Even if Blanchard's underlying assumptions were reasonable (which they were not), Blanchard's improper modeling materially and incorrectly inflated the resulting aggregated annual software development revenue projections.

39.     The projections show projected revenue by year. Instead of summing the four quarters of each year—first, second, third, and fourth quarters—Blanchard summed the second, third, and fourth quarters of the identified year as well as the first quarter of the following year. For example, for the projections for calendar year 2021, Blanchard summed the second, third, and fourth quarters of 2021 plus the first quarter of 2022—instead of (correctly) summing all four quarters of 2021. Summing the correct four quarters for each year would have resulted in lower revenue projections than Blanchard's incorrect modeling.

40.     In addition, Blanchard allocated anticipated revenues to quarters inconsistent with his own payment timing assumptions. For example, although Blanchard (with no reasonable basis) assumed that Anthem Holdings would receive $5 million from a "signing" payment on November 30, 2020 (*i.e.*, in the fourth quarter of 2020), he allocated that $5 million to the third quarter of 2021. Blanchard's internal payment timing assumptions were never disclosed to investors.

41.     Defendants forecasted over $303 million of software development revenue in 2024 and aggregate five-year revenues over $433 million. Had Blanchard (a) summed the correct quarters and (b) allocated projected revenues consistent with his own (unreasonable) assumptions, the projections would have forecasted approximately $60 million of revenues in 2024 and aggregate five-year revenues of under $100 million.

|  | 2020 | 2021 | 2022 | 2023 | 2024 | TOTAL |
|---|---|---|---|---|---|---|
| Blanchard projections | $649,000 | $10,604,750 | $19,646,156 | $99,961,928 | $303,084,689 | $433,946,523 |
| Blanchard growth | NA | 1,534% | 85.3% | 408.8% | 203.2% | - |
| Corrected projections | $5,640,000 | $5,211,000 | $4,071,938 | $19,606,605 | $61,733,958 | $96,263,501 |
| Corrected growth | NA | - 7.6% | -21.86% | 381.51% | 214.9% | - |

42.     The financial projections were false and misleading when made and Blanchard knew or was reckless in not knowing, and should have known, that the projections were false and misleading. Blanchard was responsible for creating and reviewing the spreadsheet containing the financial model—including the assumptions, formulas, and data therein—and making sure its contents were accurate, and he had (or had access to) complete information regarding the projections and the model supporting the projections. Blanchard (and the Company through Blanchard's actions) was responsible for deciding to allocate forecasted revenues to quarters inconsistent with his own assumptions, and to aggregate years based on improper quarters. As the founder, majority owner, and chief executive officer of the Company, who acted on behalf of the Company with respect to the conduct alleged in this Complaint, Blanchard's scienter is imputed to the Company.

43.     The revenue projections were material to a reasonable investor. Because the Company had executed only a single contract at the time of the Series A offering, and because Blanchard was pitching Anthem Holdings as a high-growth investment opportunity, the Company's projections were material information for prospective investors to use to evaluate

Blanchard's pitch and assess the Company's potential. The modeling errors were also material to reasonable investors. The projections Defendants presented to Series A investors forecast significant anticipated revenues (and rapid growth); accurate modeling would have reduced total anticipated revenues from over $400 million to under $100 million.

B.  False Statements about "Closing" Contracts

44.     The 2020 Series A Deck also included materially false and misleading statements about contracts that the Company was purportedly "closing." Defendants told investors that it was closing contracts with two companies—Company 1 and Company 2—and claimed those contracts would lead to significant revenue. In fact, the Company had not engaged in any meaningful negotiations with those companies, let alone proceeded to a point where the deals could be characterized as "closing."

45.     The 2020 Series A Deck contains a slide entitled "Use of Proceeds Business Development."

| SHORT TERM |  Hera Software Dev.™ | Use of Proceeds **Business Development** |
|---|---|---|

**Investment Use:**

Close outstanding MOUs and contracts for Hera / Hercules enterprise software:

- CLOSED: REDACTED , Netherlands - $250K Revenue + 15% annual service contract (plus 30% gross margin private label savings platform revenue)

  CLOSING:
- Energy Grid, Los Angeles - $1-2M Revenue + 15% annual service contract

- REDACTED , Costa Rica/WTO - $300-600K per year + 15% annual SaaS contract

- Social Media Platform - $500K-$1.5M Revenue + 15% annual service contract

**Anthem Holdings Group Earned $4.1 Million in Software Net Revenue since 2018** [20]

46.     The slide correctly identifies as "CLOSED" the one contract the Company had in fact signed at the time Blanchard presented the 2020 Series A Deck to potential investors. It also included, under the sub-heading "CLOSING," three bullets identifying certain contracts.

47.     One bullet-point on the slide lists "Energy Grid, Los Angeles," a reference to Company 1, as a contract that is "closing." On the slide, Defendants write that the potential contract is for "$1-2M Revenue + 15% annual service contract." Another bullet-point in the 2020 Series A Deck identifies a "Social Media Platform," a reference to Company 2, as contract that is "closing." Defendants state that that potential contract is for $500K-$1.5M Revenue + 15% annual service contract."

48.     A reasonable investor would have understood from this slide that Anthem

Holdings had a reasonable basis to conclude that it would soon close contracts with Company 1

and Company 2 on the terms described in the slide.

49.     The information regarding contracts with Company 1 and Company 2 in the 2020

Series A Deck was false and misleading because Anthem Holdings was not in the process of

closing contracts with Company 1 or Company 2, and certainly not on the specified financial

terms. At the time Blanchard presented the 2020 Series A Deck to prospective investors, Anthem

Holdings had not engaged in any negotiations with Company 1, and there was no other basis to

conclude (1) that a contract with Company 1 was "closing" or (2) that Anthem Holdings was in

position to secure a contract with the specified revenues and service component. Anthem

Holdings never executed a contract with Company 1. At the time Blanchard presented the 2020

Series A Deck to prospective investors, Anthem Holdings had not engaged in any negotiations

with Company 2, and there was no other basis to conclude (1) that a contract with Company 2

was "closing" or (2) that Anthem Holdings was on track to secure a contract with the specified

revenues and service component. Anthem Holdings never executed a contract with Company 2.

50.     The information regarding contracts with Company 1 and Company 2 in the 2020

Series A Deck was false and misleading when made, and Blanchard knew or was reckless in not

knowing, and should have known, that the information was false and misleading. Blanchard was

the founder, chief executive officer, and majority owner of the Company and was knowledgeable

about contract negotiation at the Company, and Blanchard knew that at that time the Company

had only closed a single contract. As the founder, majority owner, and chief executive officer of

the Company, who acted on behalf of the Company with respect to the conduct alleged in this Complaint, Blanchard's scienter is imputed to the Company.

51.     Defendants' false and misleading statements regarding "closing" deals with Company 1 and Company 2 were material to reasonable investors. Defendants had described the Company to potential investors as a high-growth startup company; that rapid growth depended on the Company's ability to obtain additional paying customers. Because the Company had executed only a single contract at the time of the Series A offering, stating that the Company was in the process of tripling its client roster would be material to a reasonable investor.

## IV.     Defendants Made False and Misleading Statements in Connection with its Pre-Series B Offering.

52.     Defendants made false and misleading statements in both the 2021 Pre-Series B Deck and the 2022 Pre-Series B Deck. At least two individuals invested a total of $235,000 in the Pre-Series B convertible note offering after receiving these materials.

### A.  False Statements to Pre-Series B Investor 1

53.     During the summer and fall of 2021, Blanchard solicited a convertible note investment from Investor 1. In connection with that process, on August 26, 2021, Blanchard emailed a copy of the "2021 Pre-Series B Deck" to representatives of Investor 1.

54.     The 2021 Pre-Series B Deck includes a "Go to Market Strategy" slide that purports to list Anthem Holdings' "Current or Signed Clients" and "Prospects in Advance Stage Negotiations (Expected to Close)." The table states that Government Entity 3 is "a [c]urrent or [s]igned client[ ]." The table further states that Government Entity 4, Company 3, and Company 4 are "[p]rospects [i]n [a]dvance [s]tage [n]egotiations ([e]xpected to [c]lose)."



55.     A reasonable investor would have understood from this slide that Anthem Holdings had a contractual relationship with Government Entity 3 and that Anthem Holdings had a reasonable basis to conclude that it would soon close deals with Government Entity 4, Company 3, and Company 4.

56.     The 2021 Pre-Series B Deck was false and misleading because Government Entity 3 was not a client of the Company. There had never even been negotiations or discussions between the Company and Government Entity 3 about Government Entity 3 becoming a client of the Company. In addition, the 2021 Pre-Series B Deck was false and misleading because, at the time it was emailed to representatives of Investor 1, the Company was not engaged in negotiations with Government Entity 3, Government Entity 4, Company 3, or Company 4, and there was no reasonable basis for the Company to "expect[] to close" contracts with any of those entities.

57.     In addition, in October 2021, Investor 1's counsel sent emails to Blanchard and other Anthem Holdings representatives in which she asked about existing investment commitments in the Pre-Series B offering. On October 26, 2021, Blanchard stated in an email to Investor 1's representative, "We also currently have a group committing $1M."

58.     Blanchard's email was false and misleading because the Company had not secured any such commitment and there was no group who had committed to invest $1,000,000.

B.  False Statements to Pre-Series B Investor 2

59.     On or about July 1, 2022, Blanchard spoke on the phone with Investor 2, an individual. On July 1, 2022, Blanchard sent Investor 2 the "2022 Pre-Series B Deck."

60.     The 2022 Pre-Series B Deck includes a revised "Go to Market Strategy" slide that again purports to list Anthem Holdings' "Current or Signed Clients" and "Prospects in Advance Stage Negotiations (Expected to Close)." The table states that Company 5 is "a [c]urrent or [s]igned client[ ]." The table also lists Company 5 in the category of "Custom Builds." The table also states that Company 2, Government Entity 3, Government Entity 4, Company 3, Company 4, Company 6, Company 7, and Company 8 are "[p]rospects in [a]dvance [s]tage [n]egotiations ([e]xpected to [c]lose)."

| GO TO MARKET STRATEGY | Description | Current or Signed Clients | Prospects in Advance Stage Negotiations (Expected to Close) |
|---|---|---|---|
| Public Protocols | Web3-Centric | REDACTED | REDACTED<br>Comp. 7 |
| Government Builds | Civil Contracts | REDACTED | REDACTED<br>Govt. Ents. 3, 4; Comp. 3 |
| R&D | Early-Stage Investments | REDACTED | REDACTED<br>Comps. 2, 4, 6, 8 |
| Enterprise Builds | Custom Builds | REDACTED<br>Comp. 5 | REDACTED |

HeraSoft.                    CONFIDENTIAL                    10

61.     A reasonable investor would have understood from this slide that Anthem Holdings had a client relationship with Company 5 and that Anthem Holdings had a reasonable basis to conclude that it would soon close deals with Company 2, Government Entity 3, Government Entity 4, Company 3, Company 4, Company 6, Company 7, and Company 8.

62.     The 2022 Investor Deck was false and misleading because Company 5 was not a client of the Company. Anthem Holdings had signed a contract with Company 5 that granted Company 5 the non-exclusive right to market and sell certain Anthem Holdings products and services. The contract did not establish a client relationship between the Company and Company 5 or contemplate that the Company would do a custom build for Company 5. In addition, the 2022 Pre-Series B Deck was false and misleading because, at the time Blanchard sent it to Investor 2, the Company was not engaged in negotiations with Companies 2, 3, 4, 5, 6, 7, or 8 or

Government Entities 3 or 4, and there was no reasonable basis for the Company to "expect[] to close" contracts with any of those entities.

C.  Statements to Investors 1 and 2 Were Made with Scienter and Were Material.

63.     The statements identified above in the 2021 Pre-Series B Deck and the 2022 Pre-Series B Deck were false and misleading when made and Blanchard knew or was reckless in not knowing, and should have known, that the statements were false and misleading. Blanchard was responsible for the Company's business development efforts, directly and through individuals who reported to him; was the only person at Anthem Holdings who signed client contracts; and otherwise had knowledge of the status of the Company's contracts and business arrangements. Blanchard also had access, directly or through individuals who reported to him, to Anthem Holdings' customer relationship management software and other internal tools for tracking the progress of business development efforts. Blanchard executed the contract with Company 5 and, as a result, knew the contents of that agreement. As the founder, majority owner, and chief executive officer of the Company, who acted on behalf of the Company with respect to the conduct alleged in this Complaint, Blanchard's scienter is imputed to the Company.

64.     The statement regarding investment commitments in Blanchard's October 26, 2021 email was false and misleading when made and Blanchard knew or was reckless in not knowing, and should have known, that it was false and misleading. Blanchard was the primary person responsible for the Company's Pre-Series B offering efforts, and knew what commitments had been made. As the founder, majority owner, and chief executive officer of the Company, who acted on behalf of the Company with respect to the conduct alleged in this Complaint, Blanchard's scienter is imputed to the Company.

65.     The statements Defendants made to Investor 1 and Investor 2 about Anthem Holdings' business development pipeline were material to a reasonable investor. As a software development company, client contracts to develop software were Hera's (and Anthem Holdings') principal source of revenue. As a result, it would be material to a Pre-Series B investor whether Hera had a reasonable basis to expect revenue from existing contracts or prospective contracts with a reasonable likelihood of closing. This was especially true for a Company that, at the time of the Pre-Series B offering, had only signed a small number of contracts, and that Blanchard was continuing to pitch as a high-growth investment.

66.     Defendants' statement to Investor 1 regarding a $1 million investment commitment was material to a reasonable investor because the existence of a significant investment commitment signals that other investors have positively evaluated Blanchard's fundraising pitch, and that the Pre-Series B offering was raising an appreciable amount of money (thereby improving the Company's liquidity and prospects).

V.      **Defendants Made False and Misleading Statements in Connection with the Offer, Purchase, or Sale of Securities; Used the Means of Interstate Commerce; and Obtained Money by Means of the Misrepresentations and Omissions.**

67.     The false and misleading statements identified in this Complaint were made in the offer or sale and in connection with the offer, purchase, or sale of securities. Defendants made and disseminated each misrepresentation using the means of interstate commerce, including email. Defendants obtained money by means of the misrepresentations and omissions detailed in this Complaint. The Company received the funds invested in it.  Blanchard received investor funds as salary.

## VI.    Defendants Engaged in a Deceptive Course of Business.

68.    In addition to making the false and misleading statements identified above, Defendants engaged in other deceptive conduct in furtherance of a scheme to defraud investors in violation of Sections 17(a)(1) and (3) of the Securities and Section 10(b) of the Exchange Act and Rules 10b-5(a) and (c) thereunder.

69.    Blanchard, acting on behalf of Anthem Holdings, committed numerous fraudulent and deceptive acts.  Among other things, Blanchard:

a.    compiled false information for the purpose of providing it to investors;

b.    when creating the financial projections, (1) included two significant government transactions he knew the Company was not pursuing and would not obtain and (2) undertook improper modeling that falsely inflated the projections;

c.    disseminated the false information he had compiled to investors at in-person meetings, virtual meetings, and in emails to investors; and

d.    participated in coordinating in-person meetings and virtual meetings with investors at which those investors were defrauded.

70.    In light of the facts alleged above, Blanchard knew or was reckless in not knowing, and should have known, that his conduct was deceptive. As the founder, majority owner, and chief executive officer of the Company, who acted on behalf of the Company with respect to the conduct alleged in this Complaint, Blanchard's scienter is imputed to the Company.

## FIRST CLAIM FOR RELIEF

### Fraud—Violations of Exchange Act Section 10(b) and Rule 10b-5 Thereunder
### [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]
### (Against Both Defendants)

71.     The SEC realleges and incorporates by reference paragraphs 1 to 70 as though fully set forth herein.

72.     By engaging in the conduct alleged above, Defendants, acting with scienter, by use of the means or instrumentalities of interstate commerce, or of the mails, or of a facility of a national securities exchange, in connection with the purchase or sale of a security: (a) employed devices, schemes, or artifices to defraud; (b) made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in acts, practices or courses of business which operated or would operate as a fraud or deceit upon other persons.

73.     Accordingly, Blanchard and the Company each violated Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5(b) thereunder [17 C.F.R. § 240.10b-5(b)].

## SECOND CLAIM FOR RELIEF

### Fraud—Violations of Securities Act Section 17(a) [15 U.S.C. § 77q(a)]
### (Against Both Defendants)

74.     The SEC realleges and incorporates by reference paragraphs 1 to 70, as though fully set forth herein.

75.     By engaging in the conduct alleged above, the Defendants knowingly, recklessly, or negligently, in connection with the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails: (a) employed a device, scheme, or artifice to defraud with scienter; (b) obtained money or property

by means of an untrue statement of material fact or omission to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged in transactions, practices or courses of business that operated or would operate as a fraud or deceit upon the purchasers of such securities.

76.      Accordingly, Blanchard and the Company each violated Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

<u>**RELIEF SOUGHT**</u>

**WHEREFORE**, the SEC respectfully requests that this Court enter a final judgment:

**I.**

Permanently restraining and enjoining Defendants Blanchard and Anthem Holdings from, directly or indirectly, violating Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Exchange Act Rule 10b-5 thereunder [17 C.F.R. § 240.10b-5];

**II.**

Permanently restraining and enjoining Defendants Blanchard and Anthem Holdings from, directly or indirectly, violating Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)];

**III.**

Ordering that Defendants pay an appropriate civil money penalty pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)] and Section 21(d) of the Exchange Act [15 U.S.C. § 78u(d)];

**IV.**

Restraining and enjoining Blanchard from directly or indirectly, including, but not limited to, through any entity owned or controlled by him, participating in the issuance,

purchase, offer, or sale of any security provided, however, that such injunction shall not prevent him from purchasing or selling securities for his own personal account;

**V.**

Restraining and enjoining Anthem Holdings from directly or indirectly, including, but not limited to, through any entity owned or controlled by it, participating in the issuance, purchase, offer, or sale of any security;

**VI.**

Pursuant to Section 20(e) of the Securities Act [15 U.S.C. § 78t(e)] and Section 21(d)(2) of the Exchange Act [15 U.S.C. § 78u(d)(2)], barring Blanchard from acting as an officer or director of any issuer that has a class of securities registered pursuant to Section 12 of the Exchange Act [15 U.S.C. § 78l] and that is required to file reports under Section 15(d) of the Exchange Act [15 U.S.C. § 78o(d)];

**VII.**

Retaining jurisdiction over this action to implement and carry out the terms of all orders and decrees that may be entered; and

**VIII.**

Granting such other relief as this Court may deem just or appropriate.

**<u>JURY DEMAND</u>**

The SEC demands a trial by jury on all claims so triable.

**<u>REQUEST FOR PLACE OF TRIAL</u>**

The SEC hereby requests that trial be held in the City of Kansas City, Kansas.

Dated: September 23, 2024

By:     /s/ Sharan E. Lieberman
        Sharan E. Lieberman
        Jason M. Spitalnick
        Attorneys for Plaintiff
        UNITED STATES SECURITIES AND
        EXCHANGE COMMISSION
        Denver Regional Office
        1961 Stout Street, 17th Floor
        Denver, Colorado 80294
        303-844-1036
        303-844-1078
        liebermans@sec.gov
        spitalnickj@sec.gov